MARY LANGAN, APPELLEE, v. GEORGE H. THUMMEL,
APPELLANT.

**Contract:** CONSTRUCTION: TIME.   On the 8th day of May the
parties entered into a contract in writing, by which T. sold to
L. a land contract for a quarter section of land held by T.
from a land grant railroad company, for the price of $1,200,
L. paying $456 down in cash, and note of another party which
was received as cash, and agreeing to pay on or before July 1
balance of $750, and the balance of full payment in one year
after June 1, 1886, with interest at 10 per cent per annum.
The writing contained the following clause, "And this contract
is to be construed strictly as to payments."   No payment was
made July 1.   July 6, T. notified L. by letter of the cancella-
tion of the contract, and returned the note received in first pay-
ment.   July 10, L. tendered to T. the amount of the July pay-
ment, with six dollars additional to cover interest, etc.   In an
action by L. against T. for specific performance of the contract,
*Held*, That time was not of the essence of the contract, and that,

under the facts and circumstances of the case as adduced at the trial, L. had not been guilty of gross negligence in making the July payment.

APPEAL from the district court of Hall county. Heard below before TIFFANY, J.

*W. H. Platt,* for appellant, cited: Wat. on Specif. Performance, Sec. 629. *Richmond v. Gray,* 3 Allen, 25. *Goldsmith v. Guild,* 10 Allen, 239. *Carter v. Phillips,* 144 Mass., 100. *Presidio Min. Co. v. Bullis,* 4 S. W. Rep., 860. *Ames v. Brooks,* 9 East. Rep., 534.

*O. A. Abbott,* for appellee, cited : *Kellogg v. Lavender,* 9 Neb., 419. *Leaird v. Smith,* 44 N. Y., 623.

COBB, J.

This case comes before this court by appeal from the decree of the district court of Hall county.

The plaintiff on July 8, 1886, filed her amended petition in the court below setting up that, on May 8, 1886, she purchased of George H. Thummel, of Grand Island, through William H. Platt, his partner, attorney, and agent, certain Union Pacific Railroad contracts for the sale of the N. E. quarter section 13, of township 10, range 12 west, for the consideration of $1,200, under the following memorandum of sale:

"OFFICE OF THUMMEL AND PLATT, LAWYERS, ⎫
  "GRAND ISLAND, NEB., May 8, 1886. ⎰

"This is to certify that we have this day disposed of our contracts on the north-east quarter of section 13, town 10, range 12 west, to Mary Langan, for the sum of twelve hundred dollars. That the said Langan agrees to pay thereon as follows, to-wit: $750 as follows: $150 cash, note of Pat Nevils, $306; balance on or before July 1, 1886. The balance of full payment in one year after

June 1, 1886, with interest at ten per cent per annum, and this contract is to be construed strictly as to payments, and said Langan takes it subject to all equities and taxes unpaid on said land.

> "GEO. H. THUMMEL,
> "THUMMEL AND PLATT,
> "MARY LANGAN,
> "THOMAS LANGAN.

" In presence of

> " W. R. BACON."

The petitioner alleges the payment of the $150 and taxes, the delivery of the note of Nevils, and tender of the balance of $750 payment, July 6, 1886 ; that she took possession of the land, making valuable and lasting improvements, breaking up about 30 acres, planting crops of about 100 acres, and payment of part of residue. That Thummel and Platt, from whom this purchase was made, had been her attorneys for some years; that they drew up the memorandum in terms not agreed upon, which should have been for the payment of the balance on or before July 1, 1886, *or as soon as her cattle were sold*; that the contract was not read over to her husband, who acted as her agent, but was left in the possession of said attorneys. That on July 6, 1886, she tendered the balance then due, which was refused, and this suit was commenced to enforce specific performance of the contract.

The defendant answered on the 10th day of August, following, admitting the contract of the written memorandum, the possession and improvement of the land, and the payments as alleged, denying all other allegations, setting up that the contract was forfeited by the default in payment of balance due July 1, 1886, stating that the Nevil note had been returned July 6th inst.; with notice that the contract was forfeited.

The case was heard in the district court May 13, 1887, on bill, answer, replication, and testimony, and decree for

plaintiffs for specific performance of the contract by defendant on payment of $722.29 into court by plaintiffs, with a continuance of the temporary injunction against defendant from disposing of the contract of sale or interfering with plaintiffs' possession of the premises until the further order of the court.

Such further proceedings were had in the court below that subsequently, on the 15th day of June, 1887, the case was finally heard on the defendant's demurrer to plaintiffs' supplemental bill, which was overruled, with decree that "defendant make, execute, acknowledge, and deliver to plaintiffs an assignment of the contracts referred to in plaintiffs' petition between the defendant and the Union Pacific Railway Company for the conveyance by said company to defendant of the N. E. ¼ of section 13, township 10 north, of range 12 west of 6th P. M., in Hall county, Nebraska, within twenty days from this date, and that in default that this decree operate as such assignment; and it is further decreed, that the defendant be enjoined from in anywise interfering with the plaintiff in her possession of said premises, or from selling, transferring, or assigning said contracts to any other person than the plaintiff, or from in any way or manner canceling or surrendering said contracts to the Union Pacific Railway Company or to any other person; and it is further ordered that the plaintiff pay to the clerk of this court, for the use of the defendant, the sum of $495, being the balance due on her said contract, within ten days from this date."

The principal question presented by the record in this case, and the only one deemed necessary to discuss, is, whether the contract of the sale from Thummel to Langan falls within that class of contracts of which time is said to be of the essence, and which, upon the failure of the party claiming thereunder to perform his part strictly on the day provided, will result in the forfeiture of his right under it.

This class of contracts is sometimes further divided into two distinctions:

I.   Where by the nature of the contract itself, the property and rights in which it is intended to operate, the length of time in which it has to run by its own terms, or the circumstances connected therewith, require that, in order to be just and equitable between the parties, it must be fulfilled promptly on its terms, although it may not be apparent from the words of the contract, alone considered, that it was in the minds of the parties when entered into that time was to be considered of its essence.   .

II.   Where from the terms of the contract itself the parties agree that time shall be of the essence of the contract, either in expressed words, or language equivalent, clearly indicating that it was so intended by the party to be charged therewith.

Of the first class are the contracts for the purchase and sale of stocks, bonds, shares, and other moneyed securities, sales of perishable property, contracts for the sale of interest and good-will in business, and of real estate under peculiar circumstances of fluctuation in prices occasioned by a state of war, or other unusual circumstances.

The contract before us is for the purchase by the plaintiff from the defendant of certain contracts of purchase held by the latter from the Union Pacific Railroad Company of a certain quarter section of agricultural land. The land was rapidly increasing in value by reason of the settlement and improvement of the country, but was not fluctuating in price.  The change of value, either actual or anticipated, being that of constant and rapid increase, with no periods of depreciation, nor was there anything in the condition of the finances of the country rendering it probable that there would be a depreciation of its value, or a cessation in its increase within the near or distant future. The subject-matter of the contract was not, therefore, such as to bring it within the second class mentioned.

Do the terms of the contract as employed by the parties bring it within the first class? As stated by the court in the case of the *Missouri River, Ft. Scott & Gulf Railroad Company v. Brickley*, 21 Kan., 275, cited by counsel for appellant, "it is true that at one time it was the doctrine of the courts of chancery that parties could not make *time* of the essence of a contract for the sale of real estate  *  * but that doctrine has long since been overthrown, and now, in equity, as well as at law, whenever it clearly appears to be the intention of the parties that time should be of the essence of the contract that essential feature will be upheld.  *  * It is true that courts of equity do not assume that parties shall have intended that time should be of the essence of such a contract, but rather that the substantial matters are the transfer of title on the one side, and the payment of price on the other, and that if these be accomplished, although not at the exact time named therefor, the contract is in its substance and intent upheld. Hence it is common for courts to say, when there is simply a bond to convey upon the payment of certain amounts at specified times, that time is not of the essence of the contract, and decree conveyance of title upon the tender after the specified times of the stipulated price and interest, but these interpretations of the effect and intent of certain contracts is no denial of the right of the parties to make time of the essence of the contract, and no assertion of the rights of the courts to disregard or annul such stipulation when made."

Applying the above authority to the case at bar, and I think it quite applicable, while it will not be presumed that it was the intention of the parties to make time of the essence of the contract, yet it was altogether competent for them so to do; and if, upon an analysis of the language used in its construction, and an examination of the facts surrounding the making of the contract, it may be fairly understood as expressing an intention of the parties to make time of its essence, it will be so construed and held.

As we have seen, the contract was for the purchase and sale of certain contracts issued by the Union Pacific Railroad Company and held by the defendant for the conveyance of one quarter section of land upon certain final payments therein expressed to be made by the holders. By the terms of their contract the plaintiff took the railroad company's contracts, assuming to make the payments due, and to pay all taxes due on the land. She paid $456 down, and agreed to pay $294 on July 1, following, and the additional sum of $450 with ten per cent interest on June 1, 1887.

By reference to the contract it will be observed that it contains this: "And this contract is to be construed strictly as to payments."

The contract was drawn by the defendant's partner and agent, and was signed, witnessed, and delivered to the agent of the plaintiff, who returned it to the agent and partner of defendant, who deposited it in their safe; neither the plaintiff nor her agent retaining any copy or memorandum of the dates of payments to become due.

It appears from the evidence that the payment of $294, due July 1, was not made; that on the 6th of the month the defendant wrote to the plaintiff informing her that he had canceled the contract; that on the 10th the plaintiff, through her agent and husband, tendered to the defendant the sum due.

It appears from the pleadings, alleged by the plaintiff, and admitted by the answer of defendant, that the plaintiff had made valuable and lasting improvements on said land, consisting of breaking up and planting of 130 acres in crops.

It is usual, if not absolutely necessary, where parties desire that time should be "of the essence of a contract," to use those words, or their equivalent, in framing the contract. That was not done in this case, although it is evident from the language employed that the draftsman

sought to take it out of the form of simple contract for the sale and conveyance of land. The writing provides that the "contract is to be strictly construed as to payments," but its language does not call attention to the question of time, and the language used exhausts its entire force and meaning on the other qualities of the act of payment, without necessarily reaching the question of time. Whatever may have been the meaning sought to be expressed by the professional draftsman of the contract, by the use of the words above quoted, it can scarcely be presumed that the plaintiff or her husband understood them to add anything to the ordinary obligation to pay, as a condition precedent to the right to demand a conveyance.

I scarcely deem it necessary to comment upon the point as to whether there was a contemporaneous understanding between the parties that the money for the July payment was to come from the sale of plaintiff's cattle, but it appears that that was the means upon which she relied for the money for that purpose, and that without willful laches or inexcusable negligence on her part she obtained the money as an advance on her cattle, and tendered the same in discharge of such payment.

The rule of law which we all think applicable to this case is so well expressed in the opinion by Mr. Justice Story, in the case of *Taylor v. Longworth*, 14 Pet., 171, cited by counsel for appellee, that I make the following extract from it: "In the first place, there is no doubt that time may be of the essence of a contract for the sale of property. It may be made so by the express stipulation of the parties, or it may arise by implication, from the very nature of the property, of the avowed objects of the seller or the purchaser. And even when time is not thus, either expressly or impliedly, of the essence of the contract, if the party seeking a specific performance has been guilty of gross *laches*, or has been inexcusably negligent in performing the contract on his part; or if there has, in the inter-

mediate period, been a material change of circumstances affecting the rights, interests, or obligations of the parties; in all such cases courts of equity will refuse to decree any specific performance upon the plain ground that it would be inequitable and unjust.

" But except under circumstances of this sort or of an analogous nature, time is not treated by courts of equity as of the essence of the contract; and relief will be decreed to the party who seeks it, if he has not been grossly negligent, and comes within a reasonable time, although he has not complied with the strict terms of the contract. But in all such cases the court expects the party to make out a case free from all doubt; and to show that the relief which he asks is, under all the circumstances, equitable; and to account in a reasonable manner for his delay and apparent omission of his duty."

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.