S. S. BROWN, APPELLANT, V. VALENTINE ULRICH ET AL., APPELLEES.

FILED MAY 6, 1896. No. 6548.

1. **Specific Performance:** CONTRACTS: TIME. Parties to a contract for the sale of land may make time of its essence by a distinct provision to that effect in the contract; and where they have done so, a court of equity will refuse to enforce specific performance in favor of a party who has been in default, unless strict performance has been waived. *Morgan v. Bergen*, 3 Neb., 209, followed.

2. **Vendor and Vendee:** CONTRACTS: SPECIFIC PERFORMANCE. A contract for the sale of land provided that payment should be made by a certain time and that time was of the essence of the contract. Subsequently a further contract was made recognizing the first as abrogated, and providing that a conveyance would be made upon payment of the purchase money, together with certain independent indebtedness by the vendee to the vendor, on or before a certain other date. Time was also made of the essence of this contract. The purchase money not having been tendered by the time fixed, *held*, that equity would not require a conveyance.

3. ———: ———: WAIVER OF STRICT PERFORMANCE. The fact that the vendor had instituted an action to recover the other indebtedness

referred to in the second contract did not constitute a waiver of strict performance; the action not being for any portion of the purchase money of the land.

APPEAL from the district court of Hamilton county. Heard below before BATES, J.

*Hainer & Smith,* for appellant.

*W. H. Thompson* and *A. W. Agee, contra.*

IRVINE, C.

This was an action by S. S. Brown, as the vendee under a contract for the sale of land, to enforce the specific performance of that contract. The defendants are Valentine Ulrich and wife, Charles E. Ulrich, and H. S. Brown. The petition alleges that Charles E. Ulrich, April 2, 1886, was the owner of the land in controversy, and on that day he entered into a contract in writing with the plaintiff and H. S. Brown, in the name of H. S. Brown alone, whereby he sold and agreed to convey the land to the plaintiff and H. S. Brown for the sum of $4,800, with interest at eight per cent, payable annually, and the principal to be paid six years from the date of the contract; that H. S. Brown took possession and reduced the land to a good state of cultivation, thereby greatly improving it; that on October 15, 1887, Charles Ulrich and wife, by deed of quitclaim, conveyed to Valentine Ulrich, the latter having full notice of plaintiff's rights; that the plaintiff had paid on the contract $1,100, and that H. S. Brown had transferred by parol to the plaintiff all his right to the land; that Valentine Ulrich had forcibly taken possession of the land, and had been in receipt of the rents and profits thereof; that the plaintiff had tendered the remainder of the purchase money to Valentine Ulrich, who had refused to accept it and to make a conveyance. H. S. Brown disclaimed. The Ulriches, by a joint answer, admitted having made a contract of sale to H. S. Brown, but denied that there

was any contract with the plaintiff; and denied that Valentine Ulrich had any knowledge that plaintiff claimed any interest in the land, and denied the alleged payment. They further averred that on the 23d of September, 1891, there was a full settlement between Valentine Ulrich and H. S. Brown of this and other matters, wherein the contract of sale was recognized as having terminated, but a new contract made, providing that if H. S. Brown should pay the purchase money originally agreed upon, with interest, together with certain other indebtedness, by November 1, 1892, then Ulrich would convey the land to him, or to such person as he might designate, and that Brown had failed to so pay. For reply the plaintiff denied the affirmative allegations of the answer, and alleged that Valentine Ulrich had begun an action against the plaintiff to recover the other indebtedness referred to in the second contract. The court found generally for the defendants and dismissed the case. The plaintiff appeals.

By the express terms of the contract sued on, time was made of its essence. The language is: "It is expressly understood and agreed by and between the parties hereto that time is of the essence of this contract, and that in the event of the non-payment of said sum of money, or any part thereof, or the interest thereon, at the time or times herein named for its payment, that then the said Charles E. Ulrich is absolutely discharged at law and in equity from any and all liabilities to make and execute such deed." By the terms of the contract the whole purchase money was due April 2, 1892. No tender was made until December, 1892. In *Morgan v. Bergen*, 3 Neb., 209, the question being directly involved, the court said: "The parties may make time the essence of the contract; so that if there be a default at the day, without any just excuse and without any waiver afterwards, the court will not interfere to help the party in default." In *Langan v. Thummel*, 24 Neb., 265, the court said that time is of the essence of the contract where the nature of the

contract itself, the property and rights on which it is intended to operate, the length of time which it has to run by its own terms, or the circumstances connected therewith, require that in order to be just and equitable between the parties it must be fulfilled promptly on its terms, and also "where from the terms of the contract itself the parties agree that time shall be of the essence of the contract, either in expressed words or language equivalent, clearly indicating that it was so intended by the party to be charged therewith;" and in that case *Missouri River, F. S. & G. R. Co. v. Brickley,* 21 Kan., 275, was cited with approval, where it was said that "in equity as well as at law, wherever it clearly appears to be the intention of the parties that time should be of the essence of the contract, that essential feature will be upheld." It is true that in *Langan v. Thummel* the court held that the particular words in the contract under consideration did not make time of its essence; but the rule that a distinct provision to that effect controlled the court was distinctly reaffirmed. In *Patterson v. Murphy,* 41 Neb., 818, it was held that a party whose cause of action is founded upon a written contract is limited as to his rights by the terms of such contract, and a recovery contrary thereto cannot be sustained. In that case there was a contract for the sale of land which provided that time should be of its essence, and that in case the vendee failed to make any payment punctually the contract might be declared void without any compensation for money paid or improvements made. The vendee failed to complete the payments, and the contract having been rescinded for that reason, it was held that he could not recover back the money he had already paid.

We are aware that in *Merriam v. Goodlett,* 36 Neb., 384, specific performance was decreed where there had been a default of payment, although the contract expressly provided that time should be of its essence, and it was intimated that notwithstanding that provision time would not be considered essential where the circum-

stances of the transaction did not make it material. We think, in using this language, Chief Justice MAXWELL must have overlooked the case of *Langan v. Thummel*, in which he concurred, as well as that of *Morgan v. Bergen*, in which he wrote the opinion. The question was really not necessary to the decision in *Merriam v. Goodlett*, because there had been a waiver of the condition and the court so held. At any rate, we think that it is established, and rightly established, that the parties are bound by the terms of their contract. The court cannot make and enforce for them another contract in conflict with that which they have made for themselves; and where they distinctly and clearly stipulate that time is essential, the court cannot disregard that provision and enforce the rest of the contract. So far as *Merriam v. Goodlett* is in conflict with these views it is overruled. The original contract was therefore forfeited, or at least the vendee's right to enforce it was lost by his failure to pay or tender the purchase money within the time stipulated. We cannot find that there was any waiver of this requirement. It is true that by the contract of September 23, 1891, it was provided that a deed would be executed on the payment of the money, together with certain other indebtedness to Ulrich from the two Browns, on or before November 1, 1892; but this contract also provided that time should be of its essence, and its language was even more specific and direct in this respect than the original contract. The plaintiff cannot treat this second contract as a waiver of the terms of the first without accepting it in its entirety, and if it be so accepted the right to enforce it was also lost by failure to comply with the terms of payment. Nor did the institution of the action pleaded in the reply operate as a waiver. The money sued for in that action was not the purchase price of the land, but certain other and independent indebtedness, the payment of which by November 1, 1892, had been made one of the conditions of the second contract to convey. It was an existing debt, and Ulrich had a right

to proceed to its collection after default in payment. He was not required to relinquish that debt in order to avoid the contract to convey.

The record presents several other interesting questions; but the decision of those already mentioned requires an affirmance of the decree of the district court and it is unnecessary to consider the others.

JUDGMENT AFFIRMED.