GEORGE A. GILBERT, APPELLANT, V. UNION PACIFIC RAILROAD COMPANY, APPELLEE.

FILED MAY 24, 1907.  NO. 14,842.

1. **Vendor and Purchaser: CONTRACT: FORFEITURE.** Where a contract for the sale of real estate provides that time and punctuality are material and essential ingredients in the contract, and that nonpayment of an instalment of the purchase price shall forfeit the purchaser's rights therein, and that the vendor shall thereupon have the right to take possession of the property, such default of itself operates as a forfeiture, and the vendor is not required to give notice to the purchaser.

2. ———: ———: ———: DAMAGES. Damages cannot be recovered for the cancelation of a contract for the sale of real estate, and a resale of the property, against the vendor by a purchaser who could not have maintained an action for the specific performance of his contract had the resale not have been made.

APPEAL from the district court for Douglas county: ALEXANDER C. TROUP, JUDGE. *Affirmed.*

*Greene & Breckenridge,* for appellant.

*Edson Rich* and *Charles E. Clapp, contra.*

EPPERSON, C.

Plaintiff's amended and supplemental petitions set forth, among others, the following facts.: April 1, 1884, the Union Pacific Railway Company executed four land contracts, and therein agreed to sell to one Charles H. Payne 640 acres of land in Deuel county, Nebraska. August 12, 1898, plaintiff herein by mesne assignments acquired the purchaser's interests in said contracts. Each provided for the payment of $480 and interest annually, the last payment maturing in 1894. The purchaser agreed to make these payments when due, together with all taxes and assessments levied against the land. Each contract further provided: "It is hereby agreed and covenanted by the parties hereto that time and punctuality are material and essential ingredients in this contract, and in case the second party shall fail to make the payments aforesaid, and each of them punctually and upon the strict terms and times above limited, and likewise to perform and complete all and each of his agreements and stipulations aforesaid, strictly and literally, without any failure or default, then this contract, so far as it may bind said first party, shall become utterly null and void, and all rights and interests hereby created, or then existing in favor of or derived from the second party, shall utterly cease and determine, and the right of possession and all equitable and legal interests in the premises hereby contracted, with all the improvements and appurtenances, shall revert to, and revest in, said first party, without any declaration of forfeiture or act of reentry, or any other act by said first party to be performed, and without any right of second

14

party of reclamation or compensation for moneys paid or services performed, as absolutely, fully and perfectly as if this contract had never been made." All the stipulated payments were made except those due in 1893 and 1894. On July 23, 1898, defendant, who succeeds the Union Pacific Railway Company in interest, notified one W. C. Van Gilder, of Chicago, that the amount necessary for a deed for said land would be $812.47, and August 11, 1898, sent a telegram to one Trenton, of Chicago, as follows: "Contracts all stand in name William Atkinson by assignment from John Flanagan March 26, 1894. Will issue deed upon approved assignments from Atkinson and wife when contracts are paid in full." Plaintiff relied upon defendant's statement and telegram in making the purchase of the contracts. It is further alleged in the petition, as to the earlier payments, that the defendant accepted money to apply on said contracts after the same were due, intending to waive and thereby waiving the defaults in the payments. On July 30, 1900, without legal proceedings and without notice to plaintiff, defendant canceled said contracts, and subsequently resold the lands to some person unknown to plaintiff. Plaintiff prayed that defendant be required to answer, disclosing the amount received for the land and the remainder due from defendant to plaintiff upon the contracts, and for a judgment for the difference. Defendant filed a general demurrer to the petition, which was sustained by the court, and plaintiff appeals.

It is contended that the railway company had no right to declare a forfeiture without notice to plaintiff. It will be observed that time was the essence of the contract; that the company reserved the right upon default to immediately repossess the property without notice. In *Morgan v. Bergen,* 3 Neb. 209, it is held: "Parties may make *time* the essence of the contract, so that if there be a default at the day, without any excuse and without any waiver afterwards, the court will not interfere to help the party in default." This rule has been continuously

adhered to by this court.  See *Bradley & Co. v. Union P. R. Co.*, 76 Neb. 172, and cases cited.  From the decisions it is apparent that a grantor who by the terms of his contract is entitled to avail himself of a forfeiture may do so and maintain ejectment against his grantee in possession, and that the purchaser cannot maintain an action for the specific performance of his contract which has been forfeited.  Upon forfeiture all rights under the contract cease.  It is inoperative, and the purchaser can no more maintain an action for damages for the sale of the property to a third party than he could previous to such sale have enforced specific performance or resisted ejectment. We are satisfied that under the contract the company had the legal right to forfeiture without notice to plaintiff.

But plaintiff contends that such right of forfeiture was waived by defendant by making the statement and sending the telegram above referred to, and upon which plaintiff relied in the purchase of the contracts.  On the date of the telegram plaintiff's grantor had been in default five years.  How this message or statement was prompted, or what connection plaintiff sustained toward Trenton and Van Gilder, is not alleged.  Had plaintiff within a reasonable time after August 12, 1898, made payments upon the contract, or negotiated for and received an extension of time for the payment of defaulted amounts, it would then appear that the company had waived their right to a forfeiture, not by reason of the messages, but by the acceptance of partial payments or the granting of an extension. Plaintiff's assignment had not been approved by the defendant as the contract provided.  Plaintiff from August 12, 1898, to July, 1902, remained silent, entirely indifferent to the rights of the defendant and his obligation to pay the remainder of the purchase price.  The telegram of August 11, 1898, did not amount to a waiver of the forfeiture.  The contracts were not such as required an election to be made by the company to create a forfeiture. The nonpayment alone created the forfeiture.  For some reason unexplained a telegram was sent to Trenton.  From

the telegram itself it would seem that the company was still willing to give the holder of the contract the privilege of paying out. The telegram was not a waiver which an assignee of the contract, with no intervening circumstances which would appeal to a court of equity, could plead four years later as a ground of relief. It was mere grace, and to avail himself thereof the plaintiff should have acted within a reasonable time after receiving knowledge of the same. The company, not having received payment, had the right at the expiration of two years to sell the land which had reverted to it under the contract.

The facts pleaded are similar to those proved in *Bradley & Co. v. Union P. R. Co., supra.* Long after default the railway company, in the case cited, informed the plaintiff, the assignee of the purchaser, that deeds would be issued upon the payment of the remainder of the purchase price. Plaintiff delayed for three years, when the land was sold to a third party. It was there held: "Specific performance of a contract for the sale of real estate will not be awarded at the suit of the vendee or his assignee, where the evidence discloses gross laches in making the payments stipulated for in the contract, where time is made of the essence of the contract by the agreement of the parties." We see no difference in principle in an action for specific performance and one for an accounting, where such is based on an alleged illegal forfeiture. Plaintiff is now no more entitled to recover damages than he would be entitled to specific performance of the contract were it possible for him to procure the same. OLDHAM, C., speaking for the court in *Bradley & Co. v. Union P. R. Co., supra,* said: "While it is true, as contended by counsel for appellee, that forfeitures are never favored, either in equity or at law, and while it is also true that very slight proof will be held sufficient to show a waiver as to the date of payment on a contract of purchase of real estate, because of the disfavor in which forfeitures are regarded in courts of equity, yet this rule is always made to depend on a showing of diligence in fact by the vendee

in making the payments and the further showing of a reasonable excuse for the failure of a strict compliance with the letter of the contract."

Not having alleged diligence on his part, and the facts showing plaintiff guilty of laches, we are of opinion that the petition did not state facts sufficient to constitute a cause of action, and, under the rule announced in the case cited, the judgment of the district court should be affirmed, and we so recommend.

DUFFIE and GOOD, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.