MT. MORIAH LODGE NO. 57, A. F. & A. M., APPELLEE, V. OTOE COUNTY, APPELLANT.

FILED MAY 9, 1917. No. 19291.

1. **Taxation:** EXEMPTION: PROOF. Facts which render property exempt from taxation under section 6301, Rev. St. 1913, must be affirmatively established. *Watson v. Cowles*, 61 Neb. 216.

2. ———: ———: EVIDENCE. Evidence examined, and *held* insufficient to show that the property of plaintiff lodge is exempt from taxation. *Plattsmouth Lodge v. Cass County*, 79 Neb. 463, distinguished.

APPEAL from the district court for Otoe county: JAMES T. BEGLEY, JUDGE. *Reversed, with directions.*

*W. F. Moran,* for appellant.

*E. F. Warren* and *S. P. Davidson,* contra.

MARTIN, C.

Mt. Moriah Lodge No. 57, Ancient Free and Accepted Masons in Nebraska, was the owner of a second story of a building located in the village of Syracuse, Nebraska, and was also possessed of a limited supply of furniture and paraphernalia used in its lodge work. The authorities taxed this property for the year 1913. The plaintiff paid the tax under protest, and thereafter brought suit against the county of Otoe to recover said taxes. A jury was waived, and the court rendered judgment for the plaintiff for the full amount of the tax on the ground that said property is exempt under section 6301, Rev. St. 1913. The defendant county appeals to this court, and asks a reversal, contending that this property is not used exclusively for charitable purposes, and that the decision is wrong for that reason. Cases are cited wherein it is held that "a Masonic lodge is not a charitable benevolent institution." *City of Bangor v. Rising Virtue Lodge,* 73 Me. 428; *Morning Star Lodge v. Hayslip,* 23 Ohio St. 144. In the case of *Watson v. Cowles,* 61 Neb. 216, this court held that the taxes would have to be paid on the evidence that a part of the building was used for residental purposes and a part for school purposes, and that the plaintiff must show affirmatively the facts that render his property exempt from taxation. In the case of *Y. M. C. A. of Omaha v. Douglas County,* 60 Neb. 642, that portion of the building used for business purposes was held not exempt from taxation. This court also held in *Royal Highlanders v. State,* 77 Neb. 18, that the mere fact that an organization is carried on not for profit does not of itself exempt it from taxation. The trial court in the decision of the case at bar no doubt was governed by the decision of this court in *Plattsmouth Lodge v. Cass County,* 79 Neb. 463. The defendant insists that this case cannot be controlling for the reason that it was decided upon a stipulation of facts from which the Plattsmouth Lodge was declared to be an organization conducted exclusively for charitable and benevolent purposes. In that case the syllabus is: "Under the agreed

statement of facts in this case the property of Platts-
mouth Lodge No. 6, A. F. & A. M., is not subject to taxa-
tion for the year 1905." Judge Letton concurred in the
conclusion, saying: "Of course, if all the property of the
lodge is used exclusively for charitable purposes, as the
stipulation recites, it is also exempt, but it would have
been much more satisfactory if the case had been sub-
mitted upon testimony." A Masonic lodge may have prop-
erty which is devoted exclusively to charitable purposes,
and under the stipulation between the parties agreeing to
that proposition as stated in the syllabus, the property
was held to be exempt.

In order to determine whether the case at bar is con-
trolled by the *Plattsmouth Lodge* case, it is necessary to
ascertain the character, object and purpose of the plaintiff
lodge as shown by the evidence. The property assessed is
a hall, being the second story of a brick building located
upon a part of lot 6, block 15, in the village of Syracuse,
Otoe Couty, Nebraska, the lower story of said building
being used and owned by the First National Bank of that
village. The lodge also owns the furniture and parapher-
nalia used in its lodge ceremonies. The second floor of said
building consists of one large room, two anterooms, and
two medium sized rooms which are used by plaintiff lodge.
The lodge is supported by annual dues of $5 from each
member and the fees for doing degree work which are
charged the candidates and placed in the treasury of the
lodge, a portion of which goes to the support of the Grand
Lodge and the Masonic Home located at Plattsmouth,
Nebraska, and a portion is used for charitable purposes,
being distributed by three officers who constitute a stand-
ing committee on charity. The expenses of the local lodge
are for fuel, light, cleaning of the hall, and work of that
kind. These funds are confined largely to helping needy
members of the order, not necessarily those who are mem-
bers of the local organization, but those who have been such.
The Eastern Star also uses the lodge hall for its meetings.
It is an organization composed exclusively of the wives,

mothers and sisters of Master Masons, but the evidence shows that they had the use of the hall without any expense whatever to them, and that the lodge proper received no compensation whatever therefor. The plaintiff lodge has no way to get any revenue and obtains no income from any source except donations, the annual fees paid by each member, and the initiation and degree fees paid by candidates. The evidence of one witness also shows that the object of the lodge's charity is not limited to brother Masons and their families in distress, but that assistance, if necessary, may be rendered to any one with the approval of the lodge. This witness also swore that very little assistance had been necessary in the last two or three years, but that the lodge had helped the Masons who were caught in the cyclone at Berlin, Nebraska. This record also shows that the lodge inculcates in its members principles of morality, temperance and charity. It is thus made plainly to appear that the plaintiff lodge devotes a portion of all the funds which are derived from its members to charity, to helping the needy members and families of the same, and also to maintaining the Masonic Home at Plattsmouth. All the rest of its revenue it uses in its local work and in helping the Grand Lodge to maintain the machinery which accomplishes these purposes. Several witnesses testified that the money of this lodge was received in annual dues of the members, $5 each, and in membership dues when they were admitted. Two dollars of the $5 annual dues was sent to the Grand Lodge of the state, $1.50 for the benefit of the Grand Lodge, and a half dollar to go to the Masonic Home. The only direct and explicit testimony as to what part of the money of the lodge was spent for charitable use is this 50 cents of the $5. What was done with the other $3 is explained by the simple statement of the witnesses that it is "used for lodge purposes exclusively." One of plaintiff's witnesses says: "A dollar and a half of that goes to the Grand Lodge, and the other three and a half is retained by the local treasurer for local lodge purposes. Q. Now, how much, if you know, if any, of that dollar and a half which

you send to the Grand Lodge is appropriated or used for the Masonic Home? . A. Fifty cents of that goes to the support of the Masonic Home." The local lodge uses some other money for charitable purposes, but there is no direct evidence as to what proportion is so used. Another witness was asked: "Q. For what purposes are the fees used? A. Well, to pay the expenses of the lodge—whatever expenses are incurred. Q. Anything else? A. Well, if there is anybody needs any help we help them; give them money." So that the amount they devote to charity is very indefinite; the most of it, according to the evidence, is used for purposes other than charitable purposes. Therefore it seems to us that the *Plattsmouth Lodge* case is distinguishable from, and is not decisive of, this case. The rule of course is that all property is to be assessed, and so, unless it can be clearly shown that a certain property is specifically exempted from taxation, it must be held to be liable.

Inasmuch as the·plaintiff failed to show ·that its property is used exclusively for charitable purposes so as to come within the constitutional and statutory exemptions, the case should be reversed and judgment directed against the plaintiff.

PER CURIAM. · For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded, and the trial court is directed to enter judgment against the plaintiff,· and this opinion is adopted by and made the opinion of the court.

· REVERSED. ·