JOSEPH E. DODGE, BY ERNEST L. DODGE, HIS SON AND NEXT FRIEND, APPELLANT, v. JOHN J. GALUSHA ET AL., APPELLEES.

39 N. W. 2d 539

Filed November 10, 1949. No. 32663.

*Perry & Perry,* for appellant.

*Wade Stevens,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

This was an action in equity to obtain specific performance of an oral contract to convey real estate. Defendants filed an answer and cross-petition, in which they sought dismissal of plaintiff's action and to recover reasonable rental value of the property for a designated period. After hearing upon the merits, the trial court entered a decree dismissing plaintiff's petition and dismissing defendants' cross-petition.

With regard to plaintiff's action, the decree found that plaintiff and defendant, John J. Galusha, sometimes known as Jack Galusha, and hereinafter generally designated as defendant, had entered into a contract substantially as claimed by plaintiff, but that time was of the essence of the contract, and plaintiff, having failed to perform within such time, was not entitled to specific performance. Defendants did not file a motion for new trial or cross-appeal.

Plaintiff's motion for new trial was overruled by the trial court, and he appealed, assigning substantially that: (1) Defendants did not plead a breach or default by plaintiff; and (2) that the judgment was contrary to law and the evidence. We conclude that plaintiff's assignments should not be sustained.

The first assignment is without merit primarily because an examination of the answer and cross-petition discloses that defendants not only denied generally but

specifically pleaded non-performance by plaintiff, and set forth the facts which constituted such breach under the terms and conditions of the contract. In any event, the record discloses that plaintiff did not attack defendants' answer and cross-petition in any manner in the trial court, but rather tried the case on the issues decided in the decree. In that situation, the applicable rule is that except where jurisdiction is involved, this court will consider on appeal only questions which have been presented to and passed upon by the trial court. Badura v. Lyons, 147 Neb. 442, 23 N. W. 2d 678.

Defendants Susie Galusha and Nell P. Galusha were the wife and mother of defendant John J. Galusha. The relevant evidence upon material issues was without dispute. Plaintiff, an elderly man not in the best of health, owned a residence property in Marion. He was and had been in possession thereof during all times here involved. Defendant bid in the aforesaid property for $1,700 at a tax foreclosure sale on April 5, 1948, and thereafter obtained a sheriff's deed on May 21, 1948. On April 6, 1948, defendant mortgaged the property to Nell P. Galusha to secure a promissory note in the sum of $1,200, payable April 6, 1953, with interest at four percent.

In October 1948, defendant employed counsel to obtain possession of the property from plaintiff. In that connection, he subsequently filed a forcible entry and detainer action in the county court, which was decided on the merits November 10, 1948. On that date defendant also filed an application in the original tax foreclosure proceeding, seeking a writ of assistance. In the meantime, plaintiff's son, upon learning of the litigation in which his father had become involved, employed counsel for plaintiff. On November 10, 1948, such counsel filed a motion in the district court to vacate and set aside the original tax foreclosure decree, the confirmation of sale thereunder, and for a new trial.

While the foregoing matters were respectively pend-

ing or not yet enforced, plaintiff, his son, defendant, and their respective counsel, entered into negotiations for settlement. The result thereof was that plaintiff was temporarily left in possession, and an oral contract was made, whereby defendant agreed to sell the property to plaintiff upon receipt of $2,000 cash, which money was to be left at the First National Bank of McCook, to be there available and payable to defendant on or before December 22, 1948, and when the money was there for defendant, he was to then tender a deed to the property, together with a release of the $1,200 mortgage. Otherwise, if plaintiff did not so make such sum available and payable to defendant on or before December 22, 1948, as aforesaid, then it was agreed that a writ of assistance should issue on that date. The county judge and district judge were both informed thereof by the parties or their counsel, and had knowledge of the terms and conditions of the contract.

In the light of such knowledge, and in conformity with the contract, the district court signed and filed a journal entry on December 4, 1948, overruling plaintiff's motion, and sustaining defendants' application for a writ of assistance. In that regard, such journal entry provided in part: "and, that said parties have agreed and stipulated that Writ of Assistance be issued herein, as provided by law, in favor of said Jack Galusha for said premises, on December 22, 1948.

"IT IS THEREFORE ORDERED, CONSIDERED, ADJUDGED AND DECREED by this court that the findings herein are made a part of this judgment, and that Writ of Assistance be issued in favor of Jack Galusha for possession of the above described real estate and against the defendant Joseph E. Dodge (plaintiff herein) on December 22, 1948."

Thereafter, on December 4, 1948, defendants' attorney authoritatively wrote and sent a letter to plaintiff's attorney, which read in part: "Enclosed is a copy of the Journal Entry which the Court entered herein this day.

It definitely provides that no Writ of Assistance be issued until the 22nd of this month, before which time Mr. Galusha will sell this property upon receipt of $2000.00 cash. * * * This agreement is definite and the Court was informed of it, but the court did not consider it proper to include it in the Journal Entry."

On December 8, 1948, in response thereto, plaintiff's attorney wrote and sent plaintiff the following letter: "We are in receipt of a journal entry in the above matter which we inclose herewith. The arrangement to give you until December 22, 1948, was made under the direction of your son Ernest, who was in the office at the time and directed the telephone conversation.

"This means that you must complete your arrangements for repurchase of this property from Jack Galusha on or before December 22, 1948. We hope you will succeed in doing this; but if not, you certainly must understand from the copy of the journal entry inclosed that a writ of assistance will issue on December 22nd next to put you out of possession and Mr. Galusha in possession.

"We have done all we can do for you in this matter under the existing circumstances. We are forwarding Charles E. McCarl, attorney for Galusha, a copy of this letter."

Without dispute, the contract was made by the parties as aforesaid. Defendant knew at or about the time the contract was made that plaintiff and his son were required to raise the money to complete the transaction within the time prescribed, by obtaining loans upon insurance policies and the property itself, and defendant told them that he would cooperate with them. We find no evidence in the record that defendant did not do so.

Plaintiff negotiated and arranged to obtain two loans. One was for $700 upon the son's insurance policies. The other was for $1,300 upon the property itself. The proceeds of the first were obtained by plaintiff and left with the bank on December 22, 1948. The proceeds of

the other loan, and a mortgage on the property, executed by plaintiff to secure payment thereof, were also left with the bank on December 22, 1948. Without dispute, however, the mortgage was not to be delivered to the mortgagee and such proceeds were not to be paid to plaintiff or to be available and payable to either plaintiff or defendant until, as instructed by the loaner, the bank had received from plaintiff an abstract of title with legal opinion thereon showing title approved by the bank. Defendant gave the bank no instructions whatever, and took no part in that transaction.

Such abstract was not even ordered by plaintiff until after December 22, 1948. It was not certified until January 19, 1949. A legal opinion thereon, addressed to plaintiff and approving title, was not completed until January 22, 1949, and neither the abstract nor opinion was delivered to the bank until January 23, 1949. That was the first date upon which the $2,000 became available and payable to either plaintiff or defendant. It will be observed that such date was more than a month after the date upon which plaintiff was required to perform under the specific terms and conditions of the agreement.

In that situation, on December 22, 1948, a writ of assistance was issued by the district court as provided in the contract and in conformity with the trial court's stipulated journal entry of December 4, 1948. Thereafter, defendant refused to perform, and on February 9, 1949, plaintiff filed this action.

We are unable to find in the record any evidence justifying the application of estoppel, or that defendant in any manner or by any act, excused plaintiff's delay, or caused his default, or waived performance by plaintiff within the time prescribed, or repudiated the contract prior to the time for plaintiff's performance.

We are required primarily to decide whether or not time was of the essence of the contract under the foregoing circumstances, because if it was, then plaintiff, having failed to perform or tender complete performance

within the time, would not be entitled to specific performance.

In that connection, as said in Restatement, Contracts, § 276 (e), p. 407: "In a suit for specific performance of a contract for the sale or purchase of land, considerable delay in tendering performance does not preclude enforcement of the contract where the delay can be compensated for by interest on the purchase money or otherwise, unless

"(i) the contract expressly states that performance at or within a given time is essential, * * *."

This court only recently held: "In the ordinary contract for the sale of land, equity does not regard time as of the essence, though it may be made such where so expressly stipulated or an intention that it shall be such is clearly manifested by the agreement as a whole, construed in the light of the surrounding circumstances.

"If it appears that it was the intention to make time of the essence, it will be so regarded." Wilderman v. Watters, 149 Neb. 102, 30 N. W. 2d 301.

In Whiteman v. Perkins, 56 Neb. 181, 76 N. W. 547, it was said: "In Pomeroy, Contracts, page 462, section 390, it is said on this subject, and numerous cases cited in support of the statement: 'It is now thoroughly established that the intention of the parties must govern, and if the intention clearly and unequivocally appears from the contract, by means of some express stipulation, that time shall be essential, the time of completion or of performance, or of complying with the terms, will be regarded as essential in equity as much as at law. No particular form of stipulation is necessary; but any clause will have the effect which clearly and absolutely provides that the contract is to be void if the fulfillment is not within the prescribed time.'

"In the decision of the case of Missouri R., F. S. & G. R. Co. v. Brickley, 21 Kan. 276, opinion by Brewer, J., it was stated: 'While in agreements for the sale of real estate the time of payment is not ordinarily of the essence

of the contract, yet, by express stipulation, the parties may make it so, and, when so made, such stipulation is, like all other stipulations of the contract, to be respected and enforced by all courts, those of equity as well as those of law.'

"This court in Morgan v. Bergen, 3 Neb. 209, gave recognition and approval to the principle on which the doctrine just stated is based when it said: 'Parties may make time the essence of the contract, so that if there be a default at the day, without any just excuse and without any waiver afterwards, the court will not interfere to help the party in default.' (See, also, Langan v. Thummel, 24 Neb. 265; Patterson v. Murphy, 41 Neb. 818; Brown v. Ulrich, 48 Neb. 409; White v. Atlas Lumber Co., 49 Neb. 82. We further cite Phelps v. Illinois C. R. Co., 63 Ill. 468; 2 Warvelle, Vendors pp. 819, 830; 2 Beach, Equity Jurisprudence, sec. 592; Martin v. Morgan, 25 Pac. Rep. (Cal.) 350; Coughran v. Bigelow, 9 Utah 266, 34 Pac. Rep. 51; Axford v. Thomas, 28 Atl. Rep. (Pa.) 443; Miller v. Hughes, 63 N. W. Rep. (Ia.) 680; Ralph v. Lomer, 28 Pac. Rep. (Wash.) 760; Foot v. Bush, 69 N. W. Rep. (Ia.) 874; Higbie v. Farr, 28 Minn. 439.)

"The tender pleaded in the answer, if sufficient in other respects, was not made until subsequent to the forfeiture and suit brought to enforce it, and was ineffectual. (Ralph v. Lomer, *supra*.)"

Thereafter, in Jewett v. Black, 60 Neb. 173, 82 N. W. 375, this court said: "It is now firmly established everywhere that time may be made the essence of a contract. And it will be so regarded, even in equity, if it affirmatively and clearly appear that the parties intended that time should be essential. In 3 Pomeroy, Equity Jurisprudence (2d ed.), sec. 1408, it is said: 'Time may be essential. It is so whenever the intention of the parties is clear that the performance of its terms shall be accomplished exactly at the stipulated day.' No particular form of words is necessary to express the intention of the parties. If they have clearly indicated their purpose that the con-

tract shall be void if not performed within the prescribed time, that is sufficient. It is the business of the courts to enforce agreements actually made and not to make new ones, or relieve parties from obligations which they have deliberately assumed. Between the plaintiff and Sanford it was expressly stipulated that time should be of the essence of the contract, not, of course, by the use of these very words, but by the employment of terms almost as explicit. Morgan v. Bergen, 3 Nebr., 209; Langan v. Thummel, 24 Nebr., 265; Brown v. Ulrich, 48 Nebr., 409; White v. Atlas Lumber Co., 49 Nebr., 82; Whiteman v. Perkins, 56 Nebr., 181; Kimball v. Tooke, 70 Ill., 553; Barnard v. Lee, 97 Mass., 92; Cheney v. Libby, 134 U. S., 68. The result of this conclusion, which we reach with great reluctance, is, that Sanford's contract was forfeited upon his failure to make the payment which became due January 1, 1892."

As stated in 55 Am. Jur., Vendor and Purchaser, § 114, p. 590: "If the agreement is that the vendor will convey provided that the purchaser shall on a certain day pay a specified sum, time is deemed of the essence of the agreement and the payment of the sum on such day is a condition precedent to the creation of any right in the purchaser to the performance of the agreement. It has also been held that where the purchaser deposits the purchase price in a bank under an agreement made at the time with the vendor that he shall receive it upon delivery by him to the bank of the instruments of title named in the conditions of deposit within a specified time, the vendor is entitled to receive it only on compliance with such conditions within such time, as time is of the essence of the contract. It is generally held that a provision authorizing the vendor to declare a forfeiture of the rights of the purchaser on his default in making the payments stipulated for renders time of the essence of the contract, and a court of equity cannot relieve the purchaser of the effect of a forfeiture for such cause if promptly asserted by the vendor." See, also, 58 C. J., Specific Performance,

§ 356, p. 1090, § 362, p. 1094, and § 376, p. 1102; 49 Am. Jur., Specific Performance, § 42, p. 56.

In that connection, in 52 Am. Jur., Tender, § 24, p. 231, it is said: "It is the universal rule that a tender upon condition for which there is no foundation in the contractual relation between the parties is ineffective, or, as sometimes expressed, a tender must be without conditions to which the creditor can have a valid objection or which will be prejudicial to his rights. * * * A tender of money which is not, at the time being, the debtor's to tender, the property therein being in another, is conditional, and ineffectual to constitute a tender."

In Brown v. Ulrich, 48 Neb. 409, 67 N. W. 168, this court held: "Parties to a contract for the sale of land may make time of its essence by a distinct provision to that effect in the contract; and where they have done so, a court of equity will refuse to enforce specific performance in favor of a party who has been in default, unless strict performance has been waived. Morgan v. Bergen, 3 Neb., 209, followed." See, also, Rossbach v. Micks, 89 Neb. 821, 132 N. W. 526, 42 L. R. A. N. S. 444; 58 C. J., Specific Performance, § 355, p. 1089.

In Gilbert v. Union Pacific R. R. Co., 79 Neb. 160, 112 N. W. 359, it was held: "Where a contract for the sale of real estate provides that time and punctuality are material and essential ingredients in the contract, and that non-payment of an instalment of the purchase price shall forfeit the purchaser's rights therein, and that the vendor shall thereupon have the right to take possession of the property, such default of itself operates as a forfeiture, and the vendor is not required to give notice to the purchaser." See, also, 49 Am. Jur., Specific Performance, § 145, p. 168.

In the light of the foregoing authorities and the circumstances appearing in the record before us, we conclude that time was of the essence of the contract, and that plaintiff, having failed to perform within the time, was not entitled to specific performance.

For the reasons heretofore stated, the judgment of the trial court should be and hereby is affirmed.

AFFIRMED.