26  341|
50  664|

HENRY VEITH, APPELLANT, v. J. H. McMURTRY ET AL., APPELLEES.

[FILED APRIL 10, 1889.]

1. **Contract for Sale of Real Estate.** One P., a resident of New York, being the owner of certain lots in the city of Lincoln, after considerable correspondence with one V., of the latter place, wrote to him, saying : "If you want the lots and take them before February 15, you can have them for $3,500 cash to me." On the night of February 8, or morning of February 9, 1887, P. telegraphed to V.: "Shall have to withdraw my refusal of to-day and let it expire to-night instead of 15th. This was received by V. about 9 A. M. of the 9th, and at 11 A. M. of said day he sent the following dispatch to P.: "Received your message; accepted your last offer; to make good my refusal, I will pay the $3,500 cash; send you hereby $500, and pay balance on delivery of warranty deed." *Held:* 1. That under the terms of the telegram from P., V. had until the night of the 9th to accept the proposition. 2. That the acceptance of the offer of $3,500 cash was unconditional, and that the proposition to pay $500 at once before the delivery of the deed was in the nature of a forfeit to show good faith. 3. That as no place was designated in the contract for the payment of the money, it was for the vendor to determine whether the payment should be at his place of residence or in the city where the lots were situated. 4. Where the proposed vendor makes no objection to the terms of payment, a third party cannot do so.

2. ———: **Bona fide Purchaser.** A party who purchases real estate with knowledge that another has a contract of purchase for the same, is not a *bona fide* purchaser; and if he acquires such knowledge at any time before the payment of the consideration, he will not be protected as a purchaser in good faith.

3. ———: **Specific Performance.** If A enters into a contract to sell land to B, and without complying with the contract sells the land to C, B may compel the purchaser to convey to him, provided he is chargeable with notice at the time of his purchase of B's equitable title under the agreement.

4. ———: ———. A purchaser with notice is liable to the same equity, stands in his place, and is bound to do that which the person he represents would be bound to do by the decree. He takes the estate subject to the charge, and stands in the place of his vendor.

APPEAL from the district court of Lancaster county. Heard below before CHAPMAN, J.

*Billingsley & Woodward,* and *J. B. Archibald,* for appellants, cited: *Vassar v. Camp,* 11 N. Y. 44; Abbott's Trial Evidence, p. 289; *Iron Co. v. R. R. Co.,* 91 N. Y. 155; *Booth v. Bierce,* 38 Id. 463; *White v. Corlies et al.,* 46 Id. 467; *O'Neill v. James,* 43 Id. 84; Story's Equity Jurisprudence, vol. 2, p. 425, 437.

*J. R. Webster,* for appellee, cited: *Whitehorn v. Cranz,* 20 Neb. 398; *Richardson v. Hardwick,* 106 U. S. 252; *Quick v. Wheeler,* 78 N. Y. 300; *Smith v. Reynolds,* 3 McCrary, (C. C.,) 157; *Faulkner v. Hebard,* 26 Vt. 452; *Gregory v. Cameron,* 7 Neb. 419; *Maynard v. Tabor,* 53 Me. 511; *Curtis v. Blair,* 26 Miss. 309; *Baker v. Holt,* 56 Wis. 100; *Tompkins v. Batie,* 11 Neb. 153; *Horacek v. Keebler,* 5 Id. 357-8; *Robinson v. Cheney,* 17 Id. 673; *Gartrell v. Stafford,* 12 Id. 679.

MAXWELL, J.

This is an action to enforce the specific performance of a contract for the sale of certain real estate in the city of Lincoln. It is brought against the defendants, who, it is claimed, purchased the property with notice of the plaintiff's rights. On the trial of the cause in the court below, a decree was rendered in favor of defendants. The plaintiff appeals.

The questions at issue are to a great extent questions of fact, and to be understood must be set out at length.

In January, 1887, Dr. James L. Perry, of New York City, being the owner of lots 5, 6, 7, and 8, in block 116, in the city of Lincoln, wrote to the plaintiff the following letter:

"JANUARY 31, 1887.

"*Mr. Henry Veith:* DEAR SIR—Your letter has been laid aside to answer, but I have been having rheumatism and have delayed. Will state the facts with regard to the lots. I have an offer for two lots much larger than your offer, and the prospect of selling the four lots very shortly for $4,000 — part cash and part in time. I expect the sale will be made within six weeks; perhaps within four weeks.

"The only way I can favor you is by not closing with any offer for two weeks. If you can make a sale of two of the lots, it will bring your other two to a reasonable and moderate figure. If you want the lots and take them before February 15, you can have them for $3,500 cash to me. If it will help you any you may have them for $4,000; $2,000 down and the rest in three years at six per cent. I make you this offer simply to make it easy for you in case you really want them. They won't be sold for any less to any party. Would as lief have the $3,500 cash, because I can invest it here to suit me. Your letters have been fair and business-like, and I would sell to you as soon as to anybody in the world, and would give you the preference if I could.　　Yours very truly,　　JAS. L. PERRY,
"79 West Forty-seventh street."

This letter seems to have been the result of considerable correspondence between the parties in regard to the sale of the lots in controversy. The plaintiff testifies that upon the receipt of the letter, he made provision to obtain the money. About the time the above letter was received by the plaintiff, Mr. McMurtry seems to have written to him in regard to the lots in question, and received an answer as follows:

"FEBRUARY 7, 1887.

"*Mr. J. H. McMurtry:* DEAR SIR —Your letter received on my return home, and answered by telegraph this morning.

"Have received several letters with offers since you were

here. One party I have been in correspondence with before, and I finally gave him the refusal till February 15; and I do not wish to sell them for less than $3,500 cash, or $4,000 on time, and, in fact, have said I would not, as I believe they will bring it; have been offered $3,200 cash, and $3,500 on time, but I did not consider it at all. Would prefer $3,500 cash to $4,000 time, because I can invest it here readily. * * *                    Yours truly,

"J. L. PERRY."

On the 9th of February, 1887, the plaintiff sent a telegram to Dr. Perry, as follows:

"POSTAL TELEGRAPH CABLE CO.

"1:40

"Received at 714 Seventh avenue, Feb. 9.  35 pd.

"Dated Lincoln, Neb., 9th.

"*To Mr. J. L. Perry, 79 West Forty-seventh Street:* Received your message; accepted your last offer; to make good my refusal, I will pay the thirty-five hundred dollars cash; send you hereby five hundred dollars, and pay balance on delivery of warranty deed.

"HENRY VEITH."

The plaintiff testifies in regard to this telegram as follows:

Q. That was on February 9, you say?

A. On February 9.

Q. What did you do in the way of sending money?

A. I paid him in the telegraph office; forwarded· five hundred dollars by telegraph to him, to Mr. Perry, and paid for the expense, so it would be sure of their sending and delivering it.

Q. To his office in New York?

A. Yes, sir.

Q. Did you see the defendant James H. McMurtry that day?

A. I met him at the telegraph office.

Q. State what passed between you and Mr. McMurtry in the telegraph office; state whether or not you saw him there.

A. I had written out the telegram, and was there about 11 o'clock that day.

Q. Well, state now what occurred between you and Mr. McMurtry.

A. Why, I had written out my message to Mr. Perry.

Q. What telegraph office was it?

A. In the Pacific, under the First National Bank.

Q. In this city?

A. In Lincoln. Mr. McMurtry came in; I am not aware whether he noticed me, but I noticed him. I stood, standing at the side of the counter, was just about reading over my message. He asked how much would thirty words cost to New York. I kind of looked up and watched the proceedings a little, without giving any notice that I paid any notice to it. And after Mr. McMurtry was told, why, he began to write. I saw he was writing a message addressed to James L. Perry; I could see that part of it; the same address I was writing to. I saw something was up. I then approached Mr. McMurtry, and said, that you are telegraphing about these lots; that it was no use; I had a refusal and had accepted. When I said this Mr. McMurtry said, " Is that so? " and seemed surprised, and said he had a message from James L. Perry, from New York, and the message was concerning me and the lots, and he would like to show that message to me. I said if it concerns me and the lots, I am willing to see it, and will go down with you. So we went down to Mr. McMurtry's office, and he produced a message from J. L. Perry.

Q. Who asked you to go to Mr. McMurtry's office.

A. Mr. McMurtry asked me to go to the office. He said he had a message concerning me. After we went down to the office, he produced the message, which, apparently, was from James L. Perry; but he did not show me the

whole of it, but held it in his hand and only offered one part of it. · The message was dated, and addressed to him, and he held his hand over part of it; and we got then into conversation. He said, "By this message I have a right to sell these lots, and will go through." He told me he had about sold the lots to Mr. Howard. And then, as we were in the office, and passing a little conversation concerning that, I said: "So far as I saw the message, perhaps you are entitled to presume so, provided you see me first, because I had the refusal; and if I don't want them, why, it looks to me as though you were entitled to sell to some other party, as far as I can see the correspondence."

Q. What was said about the commission?

A. I said then: "Rather than have any difficulty I would rather allow you a commission, and not get into collision in this matter;" and he said then he didn't care; it didn't make any difference to him whether his man got the lots or I would get the lots. I would get damages; that is what he said. Mr. Howard came in. I knew his name, but I had no acquaintance with him at that time. I had met him.

Q. Was this the defendant Howard in this case?

A. Yes, sir, the defendant Howard. He stepped into the room, and asked what he wanted with him; and Mr. McMurtry said nothing now, but told him to come in again. Before Mr. Howard left the room I said. to Mr. McMurtry, is this the man you have been talking of selling the lots to? Mr. McMurtry said, "No, it is not the Howard; it is another Howard from that." I asked Mr. McMurtry to step into the bank; I had made provision to have the loan in the amount to pay the balance, and that money was to be paid for the property when the deed was delivered. This ended about this conversation. I had a letter that afternoon; I went and showed him the letter. I thought I perhaps could hinder him from getting into collision, and so I showed him the said letter in order to avoid any of his purposes.

Mr. McMurtry does not deny the substance of the above testimony, and the proof fails to show that he had any authority to sell the lots in question. The telegram of the plaintiff above copied was sent in answer to the following night message:

"No. 4.

16—Pd.—Nit. 8:44 A. M. of
"NEW YORK, 9th.

"*Mr. Henry Veith, 909 O street:* Shall have to withdraw my refusal of to-day and let it expire to-night instead of the fifteenth.                                    J. L. PERRY."

This dispatch was received about nine o'clock A. M. of the 9th, and was evidently intended to give the plaintiff until the night of the 9th to accept; otherwise, the words "let it expire to-night instead of the fifteenth," would be meaningless. A fair construction of this telegram shows that Perry intended to give the plaintiff an opportunity to accept before withdrawing the proposition, and this view is supported by the letters of Dr. Perry, which will be hereafter referred to. But it is said that the plaintiff did not accept the proposition. The answer is, " I will pay the $3,500 cash; send you hereby $500, and pay balance on delivery of warranty deed." The proposition to pay $500 at once we regard as in the nature of a forfeit to show the good faith of the plaintiff, and not as a proposition to change the acceptance. No place had been agreed upon where payment was to be made and the deed delivered. This was a matter, so far as appears, to be left to the convenience of Dr. Perry. On the next day Dr. Perry sent the following telegram to the plaintiff:

" NEW YORK, 10.

"*Henry Veith, 909 O street:* Your offer or money not yet accepted. Will not sell if any difficulty with anyone. Settle that first.                                    J. L. PERRY."

He thus made no objections to the terms proposed. To

understand the difficulty spoken of in the telegram, it is necessary to refer to the telegrams and letters to and from Mr. McMurtry. On February 8, he sent the following dispatch to Perry:

"LINCOLN, NEB., 8.

"*J. L. Perry, 79 West Forty-seventh street:* Arrange here; pays thirty-five cash; will send papers to you.

"J. H. McMURTRY."

On the next day he sent a dispatch as follows:

" LINCOLN, NEB., February 9, 1887.

" *Dr. J. L. Perry, 79 West Forty-seventh street:* Make warrantee deed at once to David B. Howard and draw at sight. Veith tried to contract with me this A. M.; deed comes you will be all right; if Veith sends draft, return it; he can't hold ; Howard can.    J. H. McMURTRY."

This proposition Dr. Perry refused to accept, and sent a telegram to that effect, and also the following letter:

" FEBRUARY 10, 1887.

"*Mr. J. H. McMurtry, corner O and Eleventh streets, Lincoln, Neb.:* As instructions in my letter are not complied with, letter being same date as telegram, and referred to therein, I think Veith ought to have the preference. If sold to Veith I am willing to give you fifty dollars for your trouble, though he has not dealt through you. Would not accept payment in the way requested by you for Howard. When all matters are arranged to my satisfaction, and troubles settled between buyers, will telegraph you that all is right. My letter and telegram especially mentioned that nothing was to be done which would cause difficulties.

"J. L. PERRY."

In answer to the telegram sent at the same time that the letter was mailed, Mr. McMurtry sent the following:

"LINCOLN, NEB., February 9, 1887.

" *Dr. J. L. Perry, New York:* I was surprised this A. M.

to receive your telegraph. I had sold the lots and given the contract. If you had not telegraphed Veith at all, and simply signed a deed and sent it, you would have been all right. Veith had no idea of taking the lots till you telegraphed him—then came down. Now if he gives you a telegraph you can tell him wait your letter. Mr. Veith told me he would have got the lots for $3,000 if I had not interfered then. Well, that is all right. You get your deed here to Howard and record it. Mr. Veith can't hold you for damages nor get any from you. If you will get Howard deed here and recorded, it will be all right. Mr. Howard goes in possession of the lots to-day and also has put your contract on record. The money is in State National Bank waiting deed. Veith has no show at all; he wanted me to let him have the lots this A. M.

"Yours, J. H. McMurtry.

"I can say I sold the lots if I can get the deed here and recorded. I will see you have no trouble."

And on the 12th day of February, in answer to the letter above referred to, he wrote the following:

"Lincoln, Neb., February 12, 1887.

"*Dr. J. L. Perry, New York:* I am sorry I can't do as you wish. I would cancel your contract if I could, and take nothing. Fifty dollars is of small moment to me to have this racket here. First Mr. Veith called on me, and he gave me all the abuse he could because I told you your lots were worth $3,500. I did just as your letter said for me to do, and in both letters and telegraph I had the right to sell yesterday when I got your telegram. I went to Howard, who is a builder and contractor here, to get him to let up. He said to me: You are a 'nice duck;' advised me to sell my property and buy this to build tenements on yesterday; to-day you come to me and offer me $50 to let you out, and then his attorney, J. R. Webster, called on me and asked me for my correspondence. I gave them to

him.· He immediately commenced suit to compel you to deed, and filed it yesterday. I have the money, all of it, and Webster says he will get the lot; but if you will guarantee the matter we will send the money to New ·York, as we telegraphed you. I dislike this very much; you can take the $3,500 and let me out. There is no question on the facts or what you will have to do. I am free to say that this class of business is not what I want. ·I supposed when I was offering the lots no one else was. If I had supposed so, I would never offered the lots at all. I do not have to sell property and have this trouble. I am well-to-do, have a fine business, and I do not have to do a scalping business for a living. Now, sir, I can do nothing for you at all. I have done all I can; have sold your lots on your orders; have the money—$3,500. I will pay you on receipt of a deed to Howard. I do not charge you with bad faith to me, but rather with carelessness. You should have telegraphed me different the first time. Yet I would to-day give $50 if I was out of the matter. Veith is mad because I meddled with his business, Howard because I got him in trouble. This deed will have to come to Howard, and no mistake. The $3,500 is yours; do as you like.        Yours,        J. H. McMURTRY."

Indorsed as follows:

"You know, and know well, that Veith can't hold you. He paid you no consideration for the refusal, and you telegraphed withdrawal of the refusal. He came to purchase of me after I had sold. I do not understand you in this matter at all. You get your money, and deed to Howard, and you are in no trouble. Veith is neither in equity or right entitled to this lot."    .

The proof fails to show that Howard had any valid contract of the lots in question, or that McMurtry had sold the same as stated in these letters; nor would it be material in this case if he had done so. On the 11th of February,

1887, the attorney of the defendants sent the following telegram to Perry:

"Received at 714 Seventh avenue.

"Dated Lincoln, 11, 1887.

"*J. L. Perry, 879 West Forty-seventh street*: McMurtry can't cancel contract; money all paid; suit commenced; deposit warranty deed for David B. Howard, Chem. National Bank, N. Y., and have bank telegraph State National, and we telegraph thirty-five hundred dollars thereon."

This telegram was duly signed by the attorney for the defendants. An action was actually commenced by Howard on the 11th of February, 1887, against Perry in the district court of Lancaster county to enforce the alleged contract. Perry was notified of the action, and threats were made by the defendants to attach his property here for a breach of the alleged contract. Fearing that he was about to become involved in expensive litigation, he, on the 12th day of February, accepted the money from the defendants, which on that day had been transmitted by telegraphic order from Lincoln, and executed a deed. It is evident that Dr. Perry recognized the binding obligation of his proposition to the plaintiff, and of the acceptance of the same; and the letters of the defendant McMurtry are to a great extent filled with assertions that the contract with the plaintiff was invalid, while that with the defendant Howard was of binding force and effect. Failing to secure the desired result by assertions, they operated upon Perry's fears of an expensive litigation at a great distance from home, and by such means secured the title. The defendant McMurtry was well aware of the plaintiff's rights in the premises at the time he sought to supplant him in purchasing the property, and the testimony tends to show that McMurtry was the agent of Howard throughout the entire transaction. And even if it be admitted that he was not such agent on the 9th of February, 1887, although in our view he was such agent at that time, yet he is clearly

shown to have been Howard's agent prior to the payment of the money. To constitute a *bona fide* purchase for a valuable consideration, it must be without notice, and with the money actually paid. In cases of trust, there must not only be a denial of notice before the purchase, but a denial of notice before payment of the money. (*Jewett v. Palmer,* 7 Johns. Ch. 68; *Harrison v. Southcote,* 1 Atkyns, 538; *Story v. Windsor,* 2 Id. 630; *Savage v. Hazard,* 11 Neb. 327.) In any view we take of the case, therefore, the defendant Howard was well apprised of the plaintiff's rights before completing the contract with Dr. Perry. He is not entitled to protection, therefore, as a *bona fide* purchaser The rule is well settled that if A enters into a contract to sell land to B, and afterward refuses to perform his contract and sells the land to C for a valuable consideration, B may, by bill, compel the purchaser to convey to him, provided he be chargeable with notice at the time of his purchase of B's equitable title under the agreement. (Lord Macclesfield in *Atcherly v. Vernon,* 10 Mod. 518; 2 Eq. Cas. Abr., 32, sec. 43; *Taylor v. Stibbert,* 2 Ves. jr. 437; *Daniels v. Davison,* 16 Id. 249; same case, 17 Id. 433.) The rule that affects the purchaser is just as plain as that which would entitle the vendee to a specific performance against the vendor. If he be a purchaser with notice, he is liable to the same equity, stands in his place, and is bound to do that which the person he represents would be bound to do by the decree. The purchaser from the vendor takes the estate subject to the charge; and so, I apprehend, does a purchaser from the vendee, and he is equally responsible in respect to the estate. (*Champion v. Brown,* 6 Johns. Ch. 398.) Mr. Howard, therefore, having purchased the lots in question with notice of the plaintiff's rights in the premises, took the title subject to such rights. He must, therefore, upon payment of the purchase price and interest thereon, convey the lots in controversy to the plaintiff. The judgment of the district

court is reversed, and judgment will be entered in this court requiring the plaintiff within ten days from this date to pay to the clerk of this court for the use of the defendant Howard, the sum of $3,500, with interest at seven per cent from the 9th day of February, 1887; and upon such payment being made, that the defendant by a good and sufficient warranty deed convey said lots, free from all incumbrances, to the plaintiff; and in the event of his failure to do so, that the decree operate as such conveyance.

DECREE ACCORDINGLY.

THE other Judges concur.