GUY JOHNSON, APPELLEE, v. SARAH G. NORTON ET AL., APPELLANTS.

42 N. W. 2d 622

Filed May 12, 1950. No. 32749.

*Lanigan & Ondracek, Frederick M. Deutsch,* and *Beynon, Greenamyre & Hecht,* for appellants.

*William C. Smith* and *Julius D. Cronin,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an action brought by the plaintiff to quiet the title of land in him as against the defendant Sarah G. Norton, arising as a result of the recording of certain contracts between the plaintiff and the defendant. After the action was initiated the defendant had joined as parties defendant certain heirs of a deceased sister on a showing that an undivided one-third interest in the land had been conveyed to the sister by Sarah G. Norton. The defendants sought specific performance of the contracts and an accounting of rents and profits. At the beginning of the trial it was stipulated that the matter of an accounting be reserved until the determination of the specific-performance issue. The matter was so tried, the defendants assuming the burden of the specific-performance issue. The trial court found generally for the plaintiff and against the defendants, and entered a decree quieting title in the plaintiff. Defendants appeal.

We affirm the judgment of the trial court.

From a long record we have undertaken to pick out the evidentiary matters necessary to a decision here. We state facts concluded from the record.

For convenience in writing this opinion we refer to plaintiff as Johnson and to the defendants as Norton, for the rights of all defendants are dependent upon the rights of Sarah G. Norton.

Johnson is a rancher. Norton is a real estate broker. Sometime in 1940 or 1941, Johnson and Norton entered into a verbal agreement, general in terms, by which they undertook a joint venture of buying options and titles to land and selling them. Johnson was to furnish the money and hold title to the land. Norton was to arrange the purchases and sales, and handle the transactions. After the purchase price advanced by Johnson, with interest in some cases at least, had been repaid to him, and expenses repaid to both parties, profits were to be divided equally. Norton's interest in the joint venture was one of furnishing services and in return she was to receive one-half the profits.

During the progress of these operations the parties dealt with three tracts of land situated in Brown County that we will refer to herein as the Wesleyan tract (about 1,450 acres), the Woodring tract (197 acres), and the Railroad tract (40 acres). The lands were so situated that the Wesleyan and Woodring tracts were connected with each other by the Railroad tract.

The evidence does not indicate just when the Wesleyan tract was purchased. It appears that title to it first was vested in Norton and was by her conveyed to Johnson by deeds on May 20, 1942, Norton reserving, at least as to a part of the land, "one-fourth of oil and mineral rights."

It likewise is not clear when the Woodring land was purchased. Title to that land was conveyed direct to Johnson.

As to both the Wesleyan and Woodring tracts, Norton

had abstracts of title examined and purchased with approved title reports.

As to the Railroad tract it appears that Norton and Johnson together opened negotiations for its purchase. A contract of purchase was not executed. Johnson paid $100 to the owner sometime early in 1942, and was to pay an additional $900 for that land, the deal to be completed in 60 days. It was not so completed and at the end of 1942 the owner tendered back the $100 payment with notice it would not convey. The return payment was not accepted. Thereafter Norton undertook to secure the purchase of that land. The owner desired a reservation of a part of the tract. Norton was agreeable but considered that a reduced price should be had. It was not until 1947 that the owner again agreed to convey with the reservation. The payment of the balance of the purchase price never was made by anyone and the conveyance was not made.

By May 1942, the joint venture was not operating smoothly. After negotiations the parties at O'Neill, Nebraska, on May 19, 1942, entered into written agreement, not verified or acknowledged. In that agreement they arrived at a balance showing the amounts due to and from each in the joint venture to that date. They further agreed so far as material here that the three tracts of land herein referred to reflected a joint venture; they agreed upon means of financing the purchase of the lands; Norton agreed to convey the Wesleyan tract to Johnson to be held in trust and as reflecting a joint venture, although the terms of the trust were not recited; Johnson agreed to advance additional funds to be added to the balance agreed to as earlier stated in the contract; no refunds were to be made on advancements until the lands were fully paid for; all the proceeds from sales were to be divided equally after advancements had been paid; Johnson was to receive interest on certain items listed; and covenants as to other properties in the joint venture were made.

On June 15, 1942, Norton attached an affidavit to this contract setting out the legal descriptions of the Brown County land which she said was involved in the above contract, and caused it to be filed for record and recorded on June 15, 1942. This contract is one of those against which Johnson seeks to quiet title.

The parties thereafter did not undertake new ventures.

The above contract provided that all properties were to be sold or divided by July 20, 1942, that is, to have contracts of sale signed by that date. That was not accomplished.

Thereafter the parties met again in conference and undertook a further settlement of the joint venture matters. They agreed upon the division of certain funds; that Johnson would thereafter have in excess of $10,000 invested in the venture; and that the Woodring and Wesleyan tracts were to be Johnson's. Norton wanted those lands. A written memorandum agreement, dated May 18, 1943, was executed. It recited that in working out a complete settlement of their joint venture, Norton offered to pay Johnson the sum of $10,000 for the Long Pine Ranch, including two houses in Atkinson, Nebraska; that Norton was to have 30 days to secure a loan on the ranch to pay the purchase price; that Johnson agreed to place the deeds of the above-named property in escrow "which includes" the Woodring, Wesleyan, and Railroad tracts; that Norton agreed to pay $900 for the Railroad tract; and that if the ranch was rented, Johnson agreed to assign the leases to Norton upon the completion of the agreement. Other provisions as to other property need not be recited here. Norton attached an affidavit to this contract setting out what she said was the legal description of the land designated as "Long Pine Ranch" and caused the contract to be filed for record and it was recorded on October 23, 1943. Johnson's action to quiet title is also directed to this contract.

On May 19, 1943, the parties met at Columbus, Ne-

braska, and entered into another agreement dealing with the joint venture. In it, it was provided that Johnson was to pay for the Railroad tract "if the transaction can be closed," and that he would then convey it to Norton for $900, payable on or before July 1, 1943, and if the acquisition took longer than July 1, 1943, then Johnson was to notify Norton when he did acquire it and Norton agreed to pay within 30 days thereafter. Time was made of the essence and, if Norton did not pay, she was to forfeit all right to the Railroad tract.

Thereafter on the same day an escrow agreement was entered into and signed by the parties wherein it was agreed that "deeds" attached, signed by Johnson, covering "1,660 acres in Brown County" and other real and personal properties not involved here, should be deposited in a named bank; that Norton agreed to pay $10,000, on or before July 1, 1943, to the bank for Johnson; and that if payment was not made on or before that date, the deeds were to be returned to Johnson, and Norton "forfeits all right, title and interest to the real estate therein described." Time was made of the essence.

The total acreage of the Woodring and Wesleyan tracts is approximately the 1,660 acres mentioned in the escrow agreement. It is not contended that the Railroad tract was in anywise involved in the escrow agreement; it was separate and apart from that transaction.

Correspondence with the bank refers to two deeds. One deed obviously related to the Atkinson property.

The net of these agreements is that Norton was to pay Johnson $10,000 for the Wesleyan and Woodring tracts on or before July 1, 1943, and receive in addition other items mentioned in the escrow agreement, and that if Johnson acquired the Railroad tract, Norton was to pay him $900 for that land. At the time the escrow agreement was being prepared Norton assured Johnson and the attorney drafting the papers that she could get the $10,000 to make the payment.

It appears that in March or April 1943, Norton had

made application for a loan on the property and had received from a Lincoln company commitments for a $7,000 and a $3,000 loan to be secured by a first and second mortgage on the three tracts. On June 30, or July 1, 1943, Norton was in Lincoln attempting to close the loan and make the payment required by the escrow agreement. Nothing is said in the escrow or other agreement about abstracts or merchantable title. Norton did not have the Woodring abstract. It was being held in Ainsworth for the payment of a fee. Norton asked Johnson to get it. He did, had it extended, and brought it to Lincoln. The time for performance was extended to July 2, and then to July 3. On July 2, the lender presented objections to the Wesleyan and Woodring titles and required corrections before the loan could be closed. The lender also required that the Railroad tract be included in the Norton title and mortgage. Norton testified that Johnson agreed to go to Omaha and get a deed to that property. Johnson denied such an agreement. In any event, Norton did not have title to the Railroad tract and could not then meet the title requirements as to the other properties, and the loan was not closed or the $10,000 payment to or for Johnson made.

It is quite apparent that both Johnson and Norton recognized that time was of the essence in making the $10,000 payment on July 1.

Thereafter on July 10 or 12, Norton called upon Johnson at his ranch and demanded an extension of time for performance. Johnson refused to extend the time but indicated a willingness to accept payment and deliver the deeds then. Nothing was done.

In August, Norton employed counsel who undertook to settle the matter. Norton said she could pay $7,000, raised the offer to $7,500, and then to $8,000. Johnson offered to take $9,800. Nothing came of that effort. There is evidence of subsequent discussions but no evidence as to details of the conversations. There was no agreement extending the time of performance.

Norton proceeded to secure documents to meet the objections of the lender to the Wesleyan and Woodring titles and it appears that by February 1944, Norton had met all objections insisted upon by the lender, save as to the securing of title to the Railroad tract. It likewise appears that the commitment of the lender to make the loan was kept in force thereafter and not withdrawn until sometime in 1946.

In December 1944, Johnson caused a written instrument to be served on Norton, wherein Johnson, asserting ownership of the "Long Pine Ranch," requested Norton to release the "contract" from the records within 20 days, and notifying Norton that upon failure so to do action would be brought to quiet title. Thereafter this action was filed on February 18, 1946. On June 6, 1946, Norton for herself and other defendants answered and cross-petitioned, praying for a dismissal of Johnson's petition, and for a decree that she and the other defendants have been the owners of the three tracts mentioned herein since May 18, 1943. She prayed that the court determine that there was due Johnson $10,000 with six percent interest from May 18, 1943, and that there was due Norton from Johnson the rental value of the lands since that time. Norton prayed for other relief not involved in this appeal. She renewed the prayer in subsequent pleadings.

The action went to trial on September 6, 1949, and to decree on October 3, 1949.

It is patent that Norton sought in the district court and seeks here a decree that she is and has been the owner of the land since May 18, 1943, subject only to the payment of $10,000, plus interest from that time, less rental value. It likewise is clear that Norton did not on July 1, 1943, or at any time later tender the payment of $10,000 to Johnson for the deeds to the land, nor has she had the funds with which to make such a payment. She had a commitment of a loan of $10,000, subject to the title objections and to securing title to the

Railroad tract. It also appears that after the original commitment was closed out, a new application for a loan was necessary, and that such an application had not been made.

It should be noted that Norton, as a purchaser from Johnson, never at any time objected to the deeds or to Johnson's title to the Wesleyan and Woodring tracts. She had accepted those titles as sufficient when they were purchased. Norton was trying to compel Johnson to meet the requirements of her lender so as to enable her to borrow the money with which to make the payments. We find nothing in the contracts that obligated Johnson to do that. The securing of the money was Norton's task, not Johnson's. She had met the lender's requirements as to the title to the Woodring and Wesleyan tracts in February 1944. Before and after that date, she was negotiating for the title to the Railroad tract, evidently trying to secure a better bargain in return for the reservation the owner demanded.

It is clear from this record that Johnson and Norton knew that Johnson did not have a binding contract for the purchase of the Railroad tract. The contract of May 19, 1943, so recognizes the situation. It is clear from this record that prior thereto they had been notified by the owner of that tract that the proposed sale would not be consummated. It likewise is clear that the purchase by Johnson "if the transaction can be closed" and the sale by Johnson to Norton of the Railroad tract were considered as a separate part of the settling of the joint venture. It is in the contract separately. The consideration was separate. The $900 was to be paid by Norton to Johnson not as a part of the payment for the Woodring and Wesleyan tracts but as a separate payment. It likewise is clear from the record that Norton never tendered the $900 to Johnson at any time. She does not show that she had the money to make the payment. The nearest we can come to that in the record is Norton's testimony that in

July 1943, a sister had told her she would let her have the money for that purpose.

Under this set of facts, should an equity court grant the specific performance which Norton seeks?

In O'Brien v. Fricke, 148 Neb. 369, 27 N. W. 2d 403, we held: "The specific performance of a contract by a court of equity is not generally demandable or awarded as a matter of absolute legal right but is directed to and governed by the sound legal discretion of the court, dependent upon the facts and circumstances of each particular case. It will not be granted where enforcement would be unjust, and may be denied where the party seeking it has failed to perform."

In Rossbach v. Micks, 89 Neb. 821, 132 N. W. 526, 42 L. R. A. N. S. 444, we held: "Where failure to convey land under an executory contract of sale is due solely to the refusal of the purchaser to pay or tender the stipulated purchase price according to the terms of his agreement, he is not entitled to specific performance or to damages for breach of contract."

In Dodge v. Galusha, 151 Neb. 753, 39 N. W. 2d 539, we held: "Where time is of the essence of such a contract, a court of equity will refuse to enforce specific performance in favor of a party who is in default, unless strict performance has been waived or excused."

In Bradley & Co. v. Union Pacific R. R. Co., 76 Neb. 172, 107 N. W. 238, we held: "Specific performance of a contract for the sale of real estate will not be awarded at the suit of the vendee or his assignee, where the evidence discloses gross laches in making the payments stipulated for in the contract, where time is made of the essence of the contract by the agreement of the parties." In McNea v. Moran, 101 Neb. 476, 163 N. W. 766, we held that this rule applied to stale claims of parties, not in possession, seeking specific performance.

In Abbas v. Demont, *ante* p. 77, 40 N. W. 2d 265, we held: "Where a vendee is in default under a contract of sale of real estate, making time the essence

and providing for a forfeiture in case of default, and there has been no waiver of the provisions of the agreement or a defense thereto established, the contract will be enforced as made."

We have tried this cause de novo on the record. Applying these rules to the facts as found, we hold that Norton is not entitled to the relief which she seeks and that Johnson is entitled to the relief he seeks.

The judgment of the district court is affirmed.

AFFIRMED.