VACLAV F. KOBZA ET AL., APPELLEES AND CROSS-APPELLANTS, v. CLARENCE E. SPATH, APPELLANT AND CROSS-APPELLEE, IMPLEADED WITH JOHN DOE ET AL., APPELLEES.

90 N. W. 2d 246

Filed May 16, 1958. No. 34322.

*Ginsburg, Rosenberg & Ginsburg,* for appellant.

*William L. Walker* and *Earl Ludlam,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an action for the specific performance of a written contract wherein defendant agreed to sell land to the plaintiffs. All defendants named in the action except the defendant Clarence E. Spath defaulted. He, as appellant, will be referred to herein as defendant. Issues were made and trial was had. The trial court granted specific performance and determined credits due to each party as against the purchase price. Items in the decree will be referred to later herein.

Defendant appeals and plaintiffs cross-appeal.

We reverse the judgment of the trial court and remand the cause with directions to deny specific performance.

The land involved is a quarter section of farm land, consisting largely of pasture land, and some tillable land planted at the time of the contract to alfalfa and wheat.

Defendant was the owner of the land subject to a mortgage to an insurance company in the sum of $5,000. On March 19, 1955, Mr. H. M. Holbert, a real estate broker with whom the property was listed for sale, secured a written offer of purchase of the land from plaintiffs for $18,000. We shall refer to the terms of the offer later in this opinion.

Mr. Holbert received by check payable to him the sum of $2,000 to apply on the purchase price. The receipt is a part of the "Purchase Agreement" form. On the same date defendant signed an acceptance of the offer on the terms stated and agreed to execute a conveyance upon the terms and conditions set forth in the offer of purchase. Endorsed on the copy retained by defendant is this: "H. M. Holbert to receive $800.00 as full commission."

On or about April 11, 1955, plaintiffs were advised that defendant refused to perform the contract. Defendant pleads that on or about May 5, 1955, and after plaintiffs were in default, he gave notice of rescission.

On April 14, 1955, plaintiffs served upon defendant a written demand for performance and an offer to perform the contract. Defendant did not comply with the demand. We will refer to this instrument later in this opinion.

Plaintiffs filed their petition in this action on May 2, 1955. In their petition plaintiffs alleged the execution and delivery of the offer of purchase, the making of the down payment to H. M. Holbert, and the acceptance of the offer by the defendant; that they were ready and willing to perform at all times since on and prior to April 1, 1955; that on April 12, 1955, they were advised defendant was not willing to perform; that they served a demand for performance and that defendant refused to perform; that subsequent to the purchase agreement defendant had mortgaged the property to a third party; that they had performed all obligations on their part to be performed by them and were ready to perform; that they had gone into possession of the house on the property prior to April 14, 1955; and that defendant had excluded them from possession.

Plaintiffs then alleged damages in that defendant had prevented them from the use of the pasture land on the premises subsequent to May 1, 1955; that defendant permitted waste of the alfalfa field; and that they had suffered material damage from being excluded from the farm and the house for a home.

Plaintiffs prayed for specific performance of the contract including the right of possession as of May 1, 1955; that the amount due on the mortgage (placed thereon by defendant after the execution of the contract) be deducted from the purchase price; that they be ordered to pay the principal on the mortgage which they had assumed and agreed to pay, and to pay interest thereon subsequent to the time they are let into possession; that taxes and expenses of sale be deducted from the purchase price; for other equitable relief; and

for $15 per day for each day they are kept out of possession.

Defendant answered and pleaded that time was of the essence of the contract; that performance was to be had not later than April 1, 1955; that performance was not had at that time; and that the contract was therefore of no force and effect.

Defendant further alleged that at all times plaintiffs were in default of performance.

Defendant by cross-petition alleged that plaintiffs had caused the contract to be recorded in the office of the register of deeds, and that it constituted a cloud upon the title of defendant.

Defendant prayed for a dismissal of the petition; for the quieting of title in the defendant; and for equitable relief.

Plaintiffs for reply and in answer to the cross-petition denied generally and pleaded ability and willingness at all times to perform, and alleged facts upon which such contention was based.

The cause went to trial on these issues on November 9 and 10, 1955. Both parties offered evidence. Plaintiffs offered evidence to the effect that the value of the land had depreciated between April 1, 1955, and the date of trial in the sum of $3,000.

On November 10, 1955, the cause was continued to be taken up by agreement of the parties.

On February 28, 1956, plaintiffs secured permission to file an amended petition to comply with evidence received at the trial. Plaintiffs' amendment was an allegation of damages as a result of the depreciation in value and a prayer for a recovery of the depreciation as damages suffered by the delay in performance. Defendant then offered evidence that the value had appreciated during that time.

The trial court rendered its decree June 11, 1957. The trial court decreed specific performance of the contract; that the premises be conveyed subject to the $5,000 mort-

gage; and that the purchase price of $18,000 be abated and reduced by the sum of $5,000 and by the earnest money paid in the sum of $2,000 to which was to be added $400 paid by defendant on the $5,000 mortgage, making a total of $11,400 due defendant on the purchase price. To this the court ordered interest to be added from May 1, 1955, to February 28, 1956, in the sum of $605, making a grand total of $12,005. From this amount the court ordered deducted the amount of $2,-804.03 principal and interest on the second mortgage placed on the premises by the defendant subsequent to the contract, calculated to February 28, 1956, and thereafter interest was to be added at the rate of 70 cents per day "or whatever balance is due when paid off." The court further ordered the payment of interest on a judgment (paid off except interest) in the sum of $3.84 calculated to February 28, 1956, and thereafter at the rate of 1.7 cents per month. The court further allowed plaintiffs to recover $735 for 105 acres of pasture land with interest for 4 months from November 1, 1955, or a total of $749.70, and $250 for 25 acres of alfalfa hay with interest from August 1, 1955, for 7 months, or a total of $258.75; $50 for 5 acres of prairie hay with interest from August 1, 1955, for 7 months, or a total of $51.75; and $202.50 for house rent and 6 months' interest, from September 1, 1955, or a total of $204.52.

The court ordered all costs to be taxed to the defendant to be deducted from the purchase price.

The court ordered defendant to deliver the abstract of title to the plaintiffs subject to the rights of the mortgagee. The court dismissed defendant's cross-petition with prejudice.

Defendant argues here that the court erred in granting specific performance, contending that the plaintiffs were themselves in default of performance; that the contract was so ambiguous as to preclude specific performance; that the court should not have ordered specific performance after having had the case under con-

sideration for a period of over 16 months; and that the decree is so ambiguous as to preclude specific performance by the defendant.

Plaintiffs submit argument in answer to those contentions.

By cross-appeal plaintiffs argue that they should not have been required to pay interest on the $11,000 balance from April 1, 1955, to February 28, 1956; that they should have been allowed to recover the depreciation in value of the land between the date of the purchase and November 9, 1955 (the date of the beginning of the trial); and that the decree should be clarified and construed as to the payment of principal and interest on the second mortgage.

The first question we are called upon to determine is whether time was of the essence of the contract. The rule is: In the ordinary contract for the sale of real estate, equity will not regard time as of the essence, but it may be made such where so expressly stipulated or an intention that it shall be such is clearly manifested by the agreement as a whole, construed in the light of the surrounding circumstances. Dodge v. Galusha, 151 Neb. 753, 39 N. W. 2d 539.

The offer of purchase which defendant accepted provided for payment of "$11,000.00 Cash to be paid on or before April 1st 1955 or as soon there after as good and sufficient title is furnished and deed delivered, * * *." It further provided that plaintiffs were to "assume and pay with interest thereon from April 1st 1955" the $5,000 mortgage indebtedness on the property, and that "Seller is to retain and harvest all the growing wheat * * * Purchase (sic) to have possession on or before Mat (sic) 1st 1955 * * *. I (the purchaser) agree to close said purchase in accordance herewith, on or before, 10 days after abstract of title has been furnished to me for examination. * * *."

The word "Mat" above was construed by the parties to mean "May." The evidence shows that the house

on the land was occupied by a tenant. The May 1 provision was inserted so as to permit the defendant to give a 30-day notice to vacate. That was done and the tenant vacated the premises on or before April 11, 1955. The evidence shows that the abstract of title was delivered to plaintiffs' representatives on or before March 25, 1955. Under the above provision as to closing after the abstract was furnished the "on or before" time of performance was fixed as of April 6, 1955.

The evidence shows that the defendant had pressing financial obligations which he was required to meet on April 1 which he expected to pay out of the purchase money. Not having received the purchase money, defendant on April 14, 1955, mortgaged the premises for $2,600 and thereby secured the needed funds.

The evidence shows that plaintiffs were farmers; that they wanted this land for farming operations; that they had sold the premises they then occupied and were required to give possession; and that they desired immediate possession of the land involved in this litigation. The evidence is that the plaintiffs moved one load of furniture into the house on the premises on April 11, 1955, planted trees and shrubbery, and were prevented from moving additional property by the defendant. Plaintiffs at all times had the required money on deposit to make the required $11,000 payment and testified to attempts to settle on or before April 1, 1955, and on or before April 5 or 6, 1955.

The reservation by the defendant of the "growing wheat" on the premises is indicative of an intent to make time of the essence.

We accordingly hold that from the provisions of the contract and the circumstances above stated that it is clearly manifested that time was of the essence of the contract.

Defendant is shown to have been ready and willing to perform up and until April 11, 1955, when he notified plaintiffs that he considered the contract as at

an end because of the plaintiffs' failure to perform.

The applicable rules are: Where time is of the essence of such a contract, a court of equity will refuse to enforce specific performance in favor of a party who is in default, unless strict performance has been waived or excused. Dodge v. Galusha, *supra.* This rule was also followed in Johnson v. Norton, 152 Neb. 714, 42 N. W. 2d 622, where the court held: "The specific performance of a contract by a court of equity is not generally demandable or awarded as a matter of absolute legal right but is directed to and governed by the sound legal discretion of the court, dependent upon the facts and circumstances of each particular case. It will not be granted where enforcement would be unjust, and may be denied where the party seeking it has failed to perform. * * * Where failure to convey land under an executory contract of sale is due solely to the refusal of the purchaser to pay or tender the stipulated purchase price according to the terms of his agreement, he is not entitled to specific performance or to damages for breach of contract." These rules were also approved in Sofio v. Glissmann, 156 Neb. 610, 57 N. W. 2d 176, where the court further held: "A party who seeks specific performance must show not only that he has a valid legally enforceable contract but also that he has substantially complied with its terms, by performing or offering to perform on his part the acts which formed the consideration of the undertaking on the part of defendant or that he is ready, able, and willing to perform his obligations under the contract and do whatever has been made a condition precedent on his part, or show a valid excuse for nonperformance of the covenants incumbent upon him."

This brings us to the question of plaintiffs' performance and their demand for performance by defendant made on April 14, 1955.

The additional applicable rule is: Unless waived or excused, a tender of performance under such a con-

tract must be upon conditions for which there is a foundation in the contractual relation between the parties. Dodge v. Galusha, *supra.*

There is no contention that the contract provisions were waived or excused.

Toward its close the tender and demand recited that plaintiffs "tender full performance to you as above described and pursuant to said contract."

We have above set out provisions of the offer of purchase which was accepted according to its terms by the defendant.

We now refer to terms of the offer of purchase in contrast with provisions in the tender and demand for a deed.

The contract called for a consideration of $18,000 "$2,000.00 Cash receipt of which is hereby acknowledged," the balance of $11,000 cash, and $5,000 in the form of the mortgage. The $2,000 was paid to the real estate broker. The tender and demand recited that "said $13,000.00 has been deposited with Mr. William L. Walker, Attorney, * * * with direction to pay same to you upon your delivery * * *" of the deed described in the agreement.

The evidence is that a check for $11,000 payable to defendant was left with Mr. Walker endorsed "Balance of purchase price * * *" and that the $2,000 was at all times held by the broker in his bank account. The receipt signed by the broker is as follows: "Diwight (sic), Nebr. March 19th 1955 Received from Vaclav F. Kobza and Antonia M. Kobza, the sum of Two thousand and No/100- - - - - Dollars, to apply on the purchase price of the above described property on terms and conditions stated above, it being hereby agreed and understood that in case of any legal defects in the title, which cannot be cured after filing with us written notice of such legal defect, the money hereby paid is to be refunded, and in the event of the refusal or failure of the buyer to consummate the purchase, to be retained

as liquidated damages for failure to carry out said contract of sale as herein agreed to. This receipt is given and proposition taken subject to approval of sale by the owner, earnest money deposited to be refunded if offer not accepted. By H. M. Holbert Agent."

Obviously the plaintiffs assumed that they controlled and had taken control of the disposition of the earnest money payment. This conclusion is fortified by another item in the tender and demand. It recited that the broker had notified the purchasers that he claimed a lien on the proceeds of the sale and the right to retain for his commission the sum of $800 under a certain listing contract. It is: "You are further notified to pay the State and County taxes in the sum of $114.86 for 1954 or permit the same to be deducted from the purchase price and all expenses of abstracting owed by you in addition to said commission for Mr. H. M. Holbert."

Obviously the question of the commission and the amount of it was a matter to be determined initially by defendant and Mr. Holbert. Plaintiffs arrogated to themselves the right to adjudicate that issue and make the payment of the commission a condition of performance by them. We find nothing in the contract that gave that right.

The purchase agreement provided for the conveyance of the premises "by warranty deed." It was signed by the two plaintiffs, without any showing that they were husband and wife.

The tender and demand required the delivery of a deed "properly made, executed and acknowledged" to Mr. Walker. The tender and demand called for a deed naming the plaintiffs as "husband and wife, as joint tenants with rights of survivorship and not as tenants in common." To the tender and demand was attached "a filled in blank form of the deed that will be suitable for acceptance * * *."

It is what is known as a joint tenancy deed. Defendant contends that he did not contract to give that kind

of a deed and that the joint tenancy provision impaired the liability of the purchasers under the assume and pay provision of the purchase agreement.

Defendant further claims that the deed is not in accord with the purchase agreement for this reason. By it the defendant was to "retain and harvest all the growing wheat." The proposed deed carried no reservation of that kind.

We have held: Unless reserved, crops standing upon the ground, matured or not, pass to the grantee named in a deed of conveyance, or to a party to whom the land is devised. In re Estate of Andersen, 83 Neb. 8, 118 N. W. 1108, 131 Am. S. R. 613.

In Cooper v. Kennedy, 86 Neb. 119, 124 N. W. 1131, 136 Am. S. R. 701, 31 L. R. A. N. S. 761, we held: "In the absence of a reservation, such crops pass by the deed; but a reservation is a collateral contract which may exist at the same time as a contract to convey the real estate."

Defendant having contracted for a reservation of the growing wheat was not required to execute a deed that did not contain that reservation.

In the tender and demand plaintiffs fixed the time of performance as of April 18, 1955, between the hours of 9 to 12 a.m. or 1 to 4:30 p.m. at Mr. Walker's office in the Stuart Building, Lincoln, Nebraska. Defendant contends that there was no provision for closing the transaction at that place. He relies on the holding in Veith v. McMurtry, 26 Neb. 341, 42 N. W. 6, that where no place is designated in a contract for the payment of money, it is for the vendor to determine where the payment is to be made.

The evidence is such that it could be held that it was agreeable to both parties to have performance completed at the office of the National Farm Loan Association office in Lincoln, Nebraska. Defendant testified that he expected performance at his farm home in Lancaster County and the evidence shows that he was available

there for that purpose. In any event there is no provision in the purchase agreement that calls for settlement at Mr. Walker's office at a specific hour or day.

The purchase agreement has this provision with reference to taxes: "Said property to be delivered to me free and clear of all encumbrances and taxes now due and payable; except" and in typing, "Pay any and all taxes up to and including the year of 1954."

The plaintiffs recognized that there was a doubt as to who should pay the 1954 taxes. In their amended petition they alleged: "(h) In the event the court should construe Exhibit 'A' to intend that plaintiffs pay the 1954 taxes, in the sum of $114.86, then defendant should be credited with said amount. Otherwise, defendant should pay the same."

Nevertheless in the tender and demand plaintiffs notified defendant to pay the 1954 taxes or permit the same to be deducted from the purchase price. Stated otherwise, they resolved the question of doubt in their own favor and made an acceptance of the decision a condition of the tender and demand.

The purchase agreement further provided that plaintiffs would "furnish the seller a written opinion from my attorney showing defects, if any, in the title to the above described property." The attorney furnished a written opinion on March 29, 1955, in which he required a bonded abstractor's certificate covering certain entries in the abstract. He also required a new release of a mortgage and certain showings as to the parties thereto. He waived objection as to certain defects he found in an action to quiet title. This written opinion was never furnished to the defendant. It appears that it was furnished to the broker, who, without reference to the defendant took the required procedures to meet the objections so stated. Nevertheless in the tender and demand plaintiffs notified the defendant to pay or permit the deduction from the purchase price of "all expenses of abstracting" without itemizing or showing the amounts

involved. We have held: "When an owner lists his property with a real estate broker for sale, it is generally understood that the broker's duties are merely to find a purchaser. No good reason exists why the owner should be required, when he uses the ordinary expressions employed in such contracts, to hedge it about with conditions limiting the authority of such a broker and preventing him from entering into a contract of sale without further consultation with the owner; but there is good reason why the broker should see that his authority to enter into a contract should affirmatively appear, if he desires his authority to extend beyond what is, as an almost universal rule, given to such brokers in the relation between a real estate agent and his principal." Gould v. Rockwell, 105 Neb. 724, 181 N. W. 655.

Under the circumstances it follows that the delivery of the written opinion of the attorney to the broker was not delivery to the defendant as the purchase agreement required.

Plaintiffs have not shown themselves as offering to perform or performing their obligations under the purchase agreement. On the contrary it appears clearly that they demanded performance by the defendant on terms and conditions either contrary to or not authorized by the purchase agreement.

It necessarily follows that plaintiffs are not entitled to a decree of specific performance and that the trial court erred in rendering such a decree.

The judgment of the trial court is accordingly reversed and the cause remanded with directions to deny the prayer for specific performance and to render a decree quieting defendant's title against the recorded instruments having to do with the contract here involved.

All costs are to be taxed to the plaintiffs down to the time of the entry of such a decree.

This determination forecloses any necessity of determining the cross-appeal.

REVERSED AND REMANDED WITH DIRECTIONS.